1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9

10     LORRAINE HUMPHREY,                    Case No. 15-cv-05851-JSC

                    Plaintiff,
11                                           **ORDER RE: CROSS-MOTIONS FOR**
                                             **SUMMARY JUDGMENT**
       v.
12

13     NANCY A. BERRYHILL,

                    Defendant.
14

15

16          Plaintiff Lorraine Humphrey ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

17   seeking judicial review of a final decision by Defendant Nancy A. Berryhill, the Commissioner of

18   the Social Security Administration ("Defendant" or "Commissioner"), denying her application for

19   disability and insurance benefits and supplemental security income under Titles II and XVI of the

20   Social Security Act.[1]  *See* 42 U.S.C. §§ 401-403, 1395.  Both parties have consented to the

21   jurisdiction of the undersigned magistrate judge.  (Dkt. Nos. 8, 9.)  Now pending before the Court

22   is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.

23   (Dkt. Nos. 25, 26.)  After carefully considering the parties' submissions, the Court DENIES

24   Plaintiff's motion and GRANTS Defendant's cross-motion.

25   _____

26   [1] While Carolyn W. Colvin was the Acting Commissioner of Social Security when Plaintiff first
     filed this action, that position is now held by Nancy A. Berryhill and thus she is now the correct
27   named defendant.  This change in position has no effect on Plaintiff's pending action.  *See* 42
     U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive
28   notwithstanding any change in the person occupying the office of Commissioner of Social
     Security or any vacancy in such office.").

United States District Court
Northern District of California

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough such that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining:

> (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."

*Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

**PROCEDURAL BACKGROUND**

On May 17, 2012, Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Administrative Record ("AR") 201-16.) Plaintiff alleged disability beginning December 31, 2008. (AR 201.) Her claim was initially denied by the Social Security Administration ("SSA") on August 8, 2012, then was denied again on reconsideration on April 24, 2013. (AR 74-95, 96-128.) Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 166-67.)

On February 26, 2014, ALJ Maxine R. Benmour held a hearing in San Rafael, California, during which both Plaintiff and vocational expert ("VE") John Kilcher testified. (AR 35-73.) On April 15, 2014, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (AR 15-

29.)  Plaintiff filed a request for review (AR 309-10), which the Appeals Council denied on October 26, 2015.  (AR 1-5.)  On December 21, 2015, Plaintiff initiated this action, seeking judicial review of the SSA's disability determination under 42 U.S.C. § 405(g).  (Dkt. No. 1.)  On February 6, 2017, Plaintiff filed the present motion for summary judgment.  (Dkt. No. 25.)  Defendant filed a cross-motion for summary judgment on March 6, 2017.  (Dkt. No. 26.)

**ADMINISTRATIVE RECORD**

Plaintiff was born on May 30, 1969.  (AR 201.)  She worked intermittently as a caregiver in various nursing facilities and at a Goodwill from 1995 to 2008 (AR 267), with her longest job lasting about four to five months at Goodwill (AR 44).  It was during her work as a certified nursing assistant for Tamalpais Creek in July 2001 that Plaintiff tripped over a patient's walker, causing the back pain that is the source of her disability.  (AR 313-14.)  Plaintiff also worked for about two months as a life skills instructor at a group home for disabled adults in late 2011.  (AR 267.)  She has not worked since 2011.  (*Id.*)  She is married and has one son who, at the time of the ALJ hearing in 2014, had moved in with Plaintiff.  (AR 57, 202.)

In her disability report, Plaintiff identified lower back pain, mood swings, depression, and diabetes as conditions affecting her ability to carry out a normal work day.  (AR 250.)  For example, Plaintiff's conditions affect her ability to clean and cook.  (AR 282.)  She also has mood swings and her body is constantly sore.  (*Id.*)  To address her various symptoms, Plaintiff takes Carisoprodol, Glydurirde, HCTZ, Hydrocodone, Lisinopril, Metformin, and Vitamin D.  (AR 281.)

## I.   Medical Evidence

The instant proceeding results from Plaintiff's fourth application for benefits, with the previous three being denied at the initial or reconsideration level in 2008, 2009, and 2011.  (AR 113.)  As part of the consideration of each of Plaintiff's applications for benefits, Plaintiff was directed to undergo various physical and mental examinations.  The Court addresses the relevant examinations below.

### A.   Dr. Jonathan Gonick-Hallows

On February 20, 2008, Dr. Gonick-Hallows met with Plaintiff for a psychological

evaluation.  (AR 318-323.)  As part of the evaluation, Dr. Gonick-Hallows utilized the following: clinical interview; mental status examination; WAIS-III (Wechsler Adult Intelligence Scale, Third Edition); Wechsler Memory Scale-III; Bender-Gestalt II; Trails A and B; and test of memory malingering.  (AR 319.)  Dr. Gonick-Hallows did not review any medical or mental health records.  (*Id.*)  After performing the various tests, he stated that Plaintiff was friendly and cooperative at the interview and that she appeared to be a person that could get along well with co-workers, supervisors, and the general public.  (AR 322.)  He noted, however, that it was possible in competitive settings for Plaintiff to have moderate to severe deficits secondary to avoidant features.  (*Id.*)  Dr. Gonick-Hallows further indicated that Plaintiff seemed able to understand and perform simple instructions and was able to work on logic problems of nearly average complexity. (*Id.*)  He concluded that Plaintiff appeared stable at her current level of adjustment and that she was competent to manage her funds.  (*Id.*)

**B.**     **Dr. Timothy Canty**

On July 23, 2009, Dr. Canty met with Plaintiff to perform a psychiatric evaluation.  (AR 324-29.)  Dr. Canty did not have any of Plaintiff's psychiatric records to review.  (AR 324.)  Dr. Canty performed a mental status examination in which he asked Plaintiff a variety of questions to test her intellectual functioning.  (AR 325-26.)  He indicated that, while Plaintiff described pain-related changes in her mood and emotional state, such emotional symptoms did not seem to interfere with Plaintiff's functioning and that her complaints regarding work centered entirely on her back pain.  (AR 326.)  Dr. Canty concluded that, in light of Plaintiff's chronic back pain, she would not be able to handle overly stressful or extremely fast-paced work, but she would not otherwise have any psychiatric limitations to work.  (AR 327.)

**C.**     **Dr. Jeremy Trimble**

In July 2011, Dr. Trimble met with Plaintiff to conduct a complete psychiatric evaluation. (AR 330-37.)  In the evaluation, Dr. Trimble stated that Plaintiff was living alone; could do household chores, shopping, cooking, dressing, and bathing; and could pay bills and handle cash appropriately.  (AR 333-34.)  Dr. Trimble also recorded that Plaintiff was groomed and casually dressed; was coherent and organized; had a somewhat flat affect; spoke in a normal rate, tone,

4

United States District Court
Northern District of California

inflection, and prosody; and had intact recent and remote memory. (AR 334-35.) Dr. Trimble ultimately concluded that Plaintiff's psychiatric prognosis was good. (AR 336.) He further noted that she was able to perform both detailed and complex tasks as well as simply and repetitive tasks and was able to maintain regular attendance, persistence, and pace. (*Id.*) Dr. Trimble also concluded that Plaintiff did not have any psychiatric limitations in her ability to perform work activities; to complete a normal work day or week; to accept instructions from supervisors; to interact with employers, coworkers, and the public; or to deal with the usual stresses encountered in competitive work. (*Id.*)

### D.      State Agency Drs. S. Amon, D. Pong, and S. Regan

Dr. S. Amon, a non-examining state agency physician, reviewed the documentary evidence of Plaintiff's claim in conducting a Physical Residual Functional Capacity ("RFC") Assessment on August 7, 2012. (AR 74-83.) Dr. Amon concluded that Plaintiff could lift or carry up to 10 pounds frequently and up to 20 pounds occasionally; could stand or walk up to six hours in an eight-hour work day; could sit up to 6 hours in an eight-hour work day; and had no limitations on pushing or pulling other than as addressed for lifting and/or carrying. (AR 81.) Dr. Amon further indicated that Plaintiff had no other postural, manipulative, visual, communicative, or environmental limitations. (*Id.*)

On reconsideration of Plaintiff's claim, non-examining physicians Drs. D. Pong and S. Regan conducted a case analysis on April 18, 2013. (AR 96-111.) As to the physical RFC assessment, Dr. Pong adopted most of Dr. Amon's initial RFC assessment, but altered the conclusion relating to Plaintiff's postural limitations, noting that Plaintiff could only occasionally climb ramps, stairs, and ladders; balance; stoop; kneel; crouch; and crawl. (AR 106.) Dr. Regan engaged in a mental RFC assessment, concluding that Plaintiff was moderately limited in her ability to understand and remember detailed instructions; was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods of time, and to perform activities within a schedule. (AR 107-08.) Dr. Regan also found that Plaintiff was moderately limited in her ability to interact appropriately with the general public. (AR 108.) Lastly, Dr. Regan indicated that Plaintiff was moderately limited in her ability to

respond or adapt appropriately to changes in the work setting.  (AR 109.)

### E.      Dr. Les Kalman

Dr. Kalman met with Plaintiff on March 23, 2013 to perform a psychiatric evaluation. (AR 486-492.)  Dr. Kalman noted that Plaintiff was cooperative, had average speech rate and volume, and had fair eye contact.  (AR 489.)  He also indicated that Plaintiff had average intelligence and that her mood was depressed and sad.  (AR 489-90.)  Dr. Kalman further noted that Plaintiff did her own shopping, cooking, and housekeeping; managed her own transportation; could care for her own personal hygiene; and paid her own bills.  (AR 490.)  Based on his evaluation, Dr. Kalman concluded that Plaintiff was able to (1) interact with supervisors and co-workers; (2) deal with the public; (3) understand, remember, and carry out simple one- and two-step job instructions; (4) maintain attention, concentration, and memory; and (5) withstand the stress and pressures associated with daily work activities.  (AR 491.)

### F.      Jordan Rose, RN

On September 6, 2013, Plaintiff's primary care provider Mr. Rose completed a Manipulative Limitations Residual Functional Capacity Questionnaire related to pain affecting Plaintiff's hands and fingers.  (AR 533-34.)  The questionnaire is a check-box report and provides an opportunity for brief comments, which Mr. Rose provided throughout.  (*Id.*)  Mr. Rose noted that Plaintiff had tenderness and pain as well as muscle spasms that resulted from gripping her hands.  (AR 533.)  Mr. Rose further stated that Plaintiff had significant limitations with reaching and that she would be likely to be absent from work three or more days per month.  (AR 534.)

### G.      Dr. Tony D. Veletto

In February 2014, Dr. Veletto completed a Lumbar Spine Residual Functional Capacity Questionnaire regarding Plaintiff's physical impairments.  (AR 543-47.)  Dr. Veletto concluded that Plaintiff had cervical and lumbar disc disease with radiculopathy, diabetes, and hypertension. (AR 543.)  Dr. Veletto noted that Plaintiff had severe neck and lower back pain radiating to her extremities and that emotional factors contributed to the severity of Plaintiff's pain.  (AR 543-44.) Dr. Veletto then identified various functional limitations Plaintiff would have in the workplace as a result of her impairments, including that she could not walk a full city block; she could only sit

or stand for 15 minutes at a time; she would need to walk around every 20 minutes; she would need to be able to take unscheduled breaks during an eight-hour work day; and she may occasionally need a cane or other assistive device for standing and walking. (AR 545.) He also indicated that she should never lift and carry things weighing more than ten pounds and that she could never twist, bend, crouch, squat, or climb ladders in a competitive workplace. (*Id.*) He also found that Plaintiff had significant limitations with reaching, handling, and fingering. (*Id.*)

## II.      Plaintiff's ALJ Hearing

On February 26, 2014, Plaintiff appeared at her hearing before ALJ Maxine R. Benmour in person. (AR 35.) Both Plaintiff and VE John Kilcher testified in person. (*Id.*)

### A.      Plaintiff's Testimony

Plaintiff has had back pains, extending from her right leg to her mid-back, since suffering an industrial injury in 2001, as well as pain and spasms in both hands. (AR 46-48.) Because of her back pain, Plaintiff is unable to sit, stand, or walk for long periods and also has trouble sleeping. (AR 55-57.) The pain also affects Plaintiff's ability to concentrate. (AR 54.) Plaintiff takes about six pills of Norco each day (two every six hours) to help with her back pain (AR 46, 63) and has also tried Flexeril and Soma for her hand pains (AR 48-49). Plaintiff indicated that the Norco makes her drowsy. (AR 50.) Plaintiff testified that she had previously discussed with her doctor options for surgery, though she could not recall any specific type of recommended surgery. (AR 50-51.) According to Plaintiff, the doctor indicated that there was a 50/50 chance that the surgery would help given that Plaintiff also has diabetes. (*Id.*) Plaintiff also suffers from diabetes (for which she takes Metformin, Lisinopril, Glyburide, and HTZ) and depression (for which she has taken Prozac). (AR 52-54.)

Plaintiff's son moved in with her to help with chores around the house, including cooking, laundry, and grocery shopping. (AR 57-59.) Prior to moving back, Plaintiff's son would sometimes come over to help with chores around the house; otherwise, Plaintiff would perform the chores herself, though with some difficulties. (AR 67-68.)

### B.      Vocational Expert's Testimony

The ALJ presented the VE with a hypothetical individual of Plaintiff's age, education, and

United States District Court
Northern District of California

7

work background who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk six hours each in an eight-hour day; occasionally climb, balance, stoop, kneel, crouch, and crawl; and is limited to simple, repetitive tasks with occasional contact with the public. (AR 69-70.) The VE testified that certain jobs existed in the region and nationally that such a hypothetical person could perform, including an assembler, DOT code 706.684-022, classified at a light level, unskilled specific vocational preparation ("SVP") of 2, of which there are 8,500 jobs in California and 1,281,000 jobs nationally; a packager, DOT code 929.587-010, classified at an SVP of 2, of which there are 15,000 jobs California and 915,000 jobs nationally; or a garment folder, DOT code 789.687-066, classified at an SVP of 2, of which there are 5,000 jobs in the region and 270,000 jobs nationally. (AR 70-71.)

The ALJ then offered a hypothetical of an individual with the same above limitations, but who also was limited to frequent handling and fingering bilaterally. (AR 71.) The VE stated that the additional limitation would not change his testimony, as the identified jobs did not require any more than frequent handling, fingering, and reaching. (*Id.*) The ALJ then presented a final limitation where the individual would also have to miss work three or more days a month, and the VE testified that the individual could not maintain competitive employment. (*Id.*)

## III. The ALJ's Findings

The ALJ performed the five-step analysis under 20 C.F.R. § 404.1520(a) and found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (AR 15.)

*At the first step*, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of December 31, 2008. (AR 17.)

*At the second step*, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, a degenerative disc disease of the cervical spine, borderline intellectual functioning, a depressive disorder, and an anxiety disorder. (AR 18.)

*At the third step*, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19.) While the ALJ acknowledged that Plaintiff had "severe"

8

United States District Court
Northern District of California

1  impairments, he concluded that her impairments were not attended with the specific clinical signs

2  and diagnostic findings required to meet or equal the requirements set forth in 20 C.F.R. Part 404,

3  Subpart P, Appendix 1 §§ 12.04, 12.06.  (AR 33.)

4          *At the fourth step*, the ALJ determined that Plaintiff had the RFC to perform light work

5  except that Plaintiff could occasionally climb, balance, stop, kneel, crouch, and crawl.  (AR 21.)

6  Further, the ALJ found that Plaintiff was limited to frequent bilateral handling and fingering as

7  well as limited to simple, repetitive tasks with occasional contact with the public.  (*Id.*)  Regarding

8  Plaintiff's own reports of her disabilities, the ALJ found her statements as to the intensity,

9  persistence, and limiting effects of her disabilities were only partially credible.  (AR 21.)  In

10  particular, the ALJ indicated that the record did not support Plaintiff's allegations of work-

11  preclusive limitations from her musculoskeletal impairments and associated symptoms.  (*Id.*)  The

12  ALJ found plaintiff only partially credible for several reasons.

13          First, the ALJ noted that objective medical records contradicted Plaintiff's allegations of

14  work-preclusive limitations.  As to Plaintiff's physical limitations, the ALJ first noted that MRIs

15  of the lumbar and cervical spines did not substantiate Plaintiff's assertions of disabling

16  musculoskeletal pains.  (AR 22.)  The ALJ then discussed various physical examination findings

17  in the medical record and concluded:

18              [W]hile the claimant demonstrated tenderness and intermittent range
                of motion limitations, because the claimant generally exhibited a
19              normal gait, intact heel and toe walking, no edema, no joint
                deformities, symmetric reflexes, intact sensation, and full motor
20              strength, in the collective, physical examination findings by
                evaluating sources do not support the claimant's allegations of
21              work-preclusive restrictions resulting from her musculoskeletal
                impairments and associated symptoms.
22

23  (*Id.*)  Regarding cognitive limitations, the ALJ determined that while Plaintiff had cognitive

24  limitations, the record did not support a finding that such limitations were disabling.  (*Id.*)  The

25  ALJ cited to Plaintiff's intelligence test scores from February 2008, which were on the upper end

26  of the borderline intellectual functioning range; Plaintiff's ability to obtain a license as a certified

27  nursing assistant, despite conflicting reports regarding the need for special education service in

28  school; the fact that Plaintiff resided alone for portions of the period of disability, regularly drove,

and was able to manage her own money; and the fact that Plaintiff primarily attributed difficulties in performing day-to-day activities to her physical, and not mental, limitations.  (AR 22-23.) Finally, as to psychological limitations, the ALJ found that "while the claimant showed an intermittently abnormal mood or affect and mildly impaired delayed recall, as evaluating sources typically noted full orientation, normal speech, cooperative behavior, intact eye contact, a normal thought process, and unremarkable thought content, examination findings by from [*sic*] a mental standpoint do not substantiate the claimant's allegations of disabling psychological symptoms." (AR 23.)

Second, the ALJ found Plaintiff partially credible because Plaintiff's course of treatment and medication was inconsistent with her allegations of disabling physical and mental impairments.  (*Id.*)  As to treatment for physical symptoms, the ALJ observed that, since Plaintiff first started taking Hydrocodone-Acetaminophen in early 2012 for pain control, her treating physicians made no significant medication adjustments after that time.  (AR 23.)  The ALJ also remarked that Plaintiff's non-medication treatments were inconsistent with disabling physical symptoms, as treating physicians, including a neurosurgeon, merely recommended conservative treatments such as physical therapy, application of heat, and stretching exercises.  (AR 24.)  As to mental symptoms, the ALJ noted that Plaintiff did not receive treatment for psychological symptoms until September 2012 despite having received primary care treatment beginning mid-2011.  (*Id.*)  Further, while Plaintiff testified at the hearing that she received psychotropic medication treatments "off and on," the ALJ found that the lack of any sustained psychological visits, urgent-care visits for troubling psychological symptoms, and psychiatric inpatient treatments was inconsistent with Plaintiff's claims of disabling psychological symptoms.  (*Id.*)

Third, the ALJ found that Plaintiff's multiple inconsistent statements decreased the overall persuasiveness of her testimony.  The ALJ provided three examples: (1) while Plaintiff testified to extremely limited daily activities at the hearing, she had previously acknowledged a considerably greater range of day-to-day activities; (2) while Plaintiff claimed that she experienced drowsiness due to her medications, she denied elsewhere that she had any bothersome medication side effects; and (3) although she testified that a doctor had recommended possible surgical intervention, there

1   was no evidence in the record indicating any such recommendation.  (*Id.*)

2       Fourth, the ALJ noted that Plaintiff's sporadic earning records prior to the onset of her

3   disability suggested that reasons other than Plaintiff's alleged disability may be the basis for her

4   continuing unemployment.  (*Id.*)

5       After assessing Plaintiff's credibility, the ALJ then continued to discuss the specific

6   medical opinions in the record.  As to Plaintiff's physical impairments, the ALJ first assigned

7   partial weight to Dr. Pong's physical RFC assessment (on reconsideration of Plaintiff's claims)

8   because, while Dr. Pong opined that Plaintiff would have no manipulative limitations, the medical

9   record supported the conclusion that Plaintiff would in fact have limitations to frequent bilateral

10  handling and fingering.  (AR 25.)  The ALJ went on to adopt other portions of Dr. Pong's

11  assessment, noting first that Dr. Pong had reviewed a sizeable portion of the medical record and

12  that he, as a state agency physician, had a thorough understanding of the SSA's disability

13  programs and evidentiary requirements.  (*Id.*)  The ALJ specifically agreed with Dr. Pong's

14  conclusions that Plaintiff would be limited to lifting 20 pounds occasionally and 10 pounds

15  frequently and that Plaintiff had postural limitations.  (*Id.*)  The ALJ gave little weight to state

16  agency physician Dr. Amon's earlier finding that Plaintiff could perform a full range of light

17  work, as Dr. Pong's later opinion was more consistent with the medical record.  (*Id.*)  The ALJ

18  next assigned little weight to Mr. Rose's assessment regarding Plaintiff's work-preclusive

19  restrictions, including that she would likely be absent from the workplace three or more days per

20  month because: (1) Mr. Rose's conclusion lacked support from his physical examination findings;

21  (2) there were no abnormal findings involving Plaintiff's upper extremities; (3) Mr. Rose provided

22  no explanations to support his conclusions; and (4) his opinion was inconsistent with the balance

23  of the medical evidence.  (AR 25-26.)  The ALJ also gave little weight to Dr. Veletto's opinion as

24  to Plaintiff's work-preclusive restrictions because: (1) as with Mr Rose, Dr. Veletto did not

25  provide explanations to support his conclusions; (2) Dr. Veletto made inconsistent findings

26  regarding Plaintiff's ability to engage in fingering; (3) while Dr. Veletto stated that Plaintiff would

27  occasionally require an assistive device, Plaintiff in fact consistently displayed a normal gait and

28  the record contained no mention of use of an assistive device; (4) Dr. Veletto's determinations

United States District Court
Northern District of California

11

1    regarding Plaintiff's manipulative, exertional, and postural limitations were not supported by the

2    totality of the medical evidence; and (5) Dr. Veletto's findings were inconsistent with the

3    proposed treatment plan.  (AR 26.)

4         Regarding Plaintiff's mental impairments, the ALJ gave great weight to the two state

5    agency psychologist medical opinions dated April 18 and 23, 2013.  (*Id.*)  The ALJ noted that the

6    state agency psychologists reviewed a large volume of the medical evidence and had a thorough

7    understanding of the SSA's disability programs and evidentiary requirements.  (*Id.*)  Furthermore,

8    the ALJ found support in the medical record the psychologists' conclusions that Plaintiff would be

9    limited to simple tasks and would require limited public contact.  (*Id.*)  Next, the ALJ gave little

10   weight to Dr. Gonick-Hallows's medical opinion because he reviewed no recent medical evidence

11   in rendering the opinion; his conclusion that Plaintiff had "avoidant features" was irreconcilable

12   with his finding that Plaintiff could get along well with others; and his conclusion that Plaintiff

13   suffered from work-preclusive limitations was unsupported by the medical evidence.  (AR 27.)

14   The ALJ also accorded little weight to Dr. Canty's opinion that, while Plaintiff should not perform

15   "stressful or extremely fast-paced work," she would otherwise have no appreciable functional

16   limitations.  (*Id.*)  The ALJ noted that Dr. Canty did not review any medical evidence and that the

17   medical record in fact indicates that Plaintiff would have limitations in performing more than

18   simple tasks or interacting with the public.  (*Id.*)  The ALJ also stated that Dr. Canty's use of the

19   vague and subjective words "stressful" and "fast-paced" diminished from the probative value of

20   his opinion.  (*Id.*)  The ALJ similarly gave little weight to Dr. Trimble's assessment that Plaintiff

21   would have no functional limitations.  (*Id.*)  According to the ALJ, Dr. Trimble's opinion was

22   inconsistent not only with the medical evidence as a whole but also with Dr. Trimble's own

23   findings of Plaintiff's flat affect, mildly impaired recall, and impaired serial seven exercises.  (*Id.*)

24   The ALJ gave partial weight to Dr. Kalman's medical opinion; the ALJ agreed with the

25   conclusion that Plaintiff would be limited to simple tasks but found that Dr. Kalman's conclusion

26   that Plaintiff would have no limitation interacting with others in the workplace was inconsistent

27   with the medical record.  (*Id.*)  Lastly, the ALJ assigned little weight to the August 2012 opinion

28   from Dr. Amon indicating that Plaintiff had no severe mental impairment.  (AR 28.)  That opinion,

United States District Court
Northern District of California

1  according to the ALJ, was inconsistent with the medical record, including the April 2013 medical

2  opinions from state agency psychologists to which the ALJ gave great weight.  (*Id.*)

3      *At the fifth step*, the ALJ found that there were jobs that existed in significant numbers in

4  the national economy that Plaintiff could perform based on the VE's testimony and the RFC that

5  resulted.  (AR 28-29.)  The VE found that Plaintiff could perform unskilled, light occupations like

6  an assembler, a packager, or a garment folder.  (AR 29.)  Therefore, the ALJ found that Plaintiff

7  was not disabled.  (*Id.*)

**STANDARD OF REVIEW**

8

9      Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to

10  deny benefits.  When exercising this authority, however, the "Social Security Administration's

11  disability determination should be upheld unless it contains legal error or is not supported by

12  substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Andrews v.*

13  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

14  1989).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

15  adequate to support a conclusion"; it is "more than a mere scintilla, but may be less than a

16  preponderance."  *Molina*, 674 F.3d at 1110-11 (internal citations and quotation marks omitted);

17  *Andrews*, 53 F.3d at 1039 (same).  To determine whether the ALJ's decision is supported by

18  substantial evidence, the reviewing court "must consider the entire record as a whole and may not

19  affirm simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d

20  1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted).

21      Determinations of credibility, resolution of conflicts in medical testimony, and all other

22  ambiguities are roles reserved for the ALJ.  *See Andrews*, 53 F.3d at 1039; *Magallanes*, 881 F.2d

23  at 750.  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the

24  record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and

25  quotation marks omitted); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1198 (9th Cir.

26  2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we

27  must defer to the ALJ's conclusion.").  "The court may not engage in second-guessing."

28  *Tommasetti*, 533 F.3d at 1039.  "It is immaterial that the evidence would support a finding

United States District Court
Northern District of California

1    contrary to that reached by the Commissioner; the Commissioner's determination as to a factual

2    matter will stand if supported by substantial evidence because it is the Commissioner's job, not the

3    Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08-CV-00147-BAK, 2009

4    WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009).  Similarly, "[a] decision of the ALJ will not be

5    reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

6    However, the Court can only affirm the ALJ's findings based on reasoning that the ALJ himself

7    asserted. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  In other words, the Court's

8    consideration is limited to "the grounds articulated by the agency[.]" *Cequerra v. Sec'y*, 933 F.2d

9    735, 738 (9th Cir. 1991).

10                                              **DISCUSSION**

11           The only issue raised on appeal is whether the ALJ properly rejected Plaintiff's pain

12   testimony as not credible.   "An ALJ engages in a two-step analysis to determine whether a

13   claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759

14   F.3d 995, 1014 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has

15   presented objective medical evidence of an underlying impairment which could reasonably be

16   expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028,

17   1036 (9th Cir. 2007) (internal citations and quotation marks omitted).  "Second, if the claimant

18   meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's

19   testimony about the severity of her symptoms only by offering specific, clear and convincing

20   reasons for doing so." *Id.* (internal citations and quotation marks omitted).  This "clear and

21   convincing" standard is not an easy requirement to meet and "is the most demanding [standard] in

22   Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

23   "General findings are an insufficient basis to support an adverse credibility determination."

24   *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, the ALJ "must state which

25   pain testimony is not credible and what evidence suggests the claimant[] [is] not credible."

26   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

27           Applying the two-step analysis, the ALJ found that Plaintiff's "medically determinable

28   impairments could reasonably be expected to cause the alleged symptoms," but that her statements

                                                        14

United States District Court
Northern District of California

1   concerning the "intensity, persistence, and limiting effects of these symptoms" were only partially

2   credible.  (AR 21.)  In making this determination, the ALJ did not find that Plaintiff was

3   malingering; the ALJ thus was required to set forth specific, clear and convincing reasons for

4   rejecting Plaintiff's pain testimony.  *See Lingenfelter*, 504 F.3d at 1036.

5           Because symptoms regarding pain are difficult to quantify, the SSA regulations list

6   relevant factors to assist ALJs in their credibility analysis.  These factors include:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

15  20 C.F.R. § 404.1529(c)(3); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)

16  ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

17  inconsistencies either in his testimony or between his testimony and his conduct, his daily

18  activities, his work record, and testimony from physicians and third parties concerning the nature,

19  severity, and effect of the symptoms of which he complains.").  These factors are intended to

20  "ensure that the determination of disability is not a wholly subjective process, turning solely on

21  the identity of the adjudicator."  *Bunnel v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

22          Here, the ALJ explained her adverse credibility finding regarding Plaintiff's specific

23  allegations of work-preclusive limitations from her musculoskeletal impairments and associated

24  symptoms: (a) objective medical evidence contradicted Plaintiff's claims of disabling

25  musculoskeletal pains, cognitive impairments, and psychological limitations; (b) Plaintiff's course

26  of medication and physical treatment were inconsistent with her allegations of disabling physical

27  and mental symptoms; (c) Plaintiff made inconsistent statements regarding the scope of her daily

28  activities, the side effects from her medication, and her claim that an evaluating surgeon

1    recommended surgical intervention; and (d) Plaintiff's sporadic earning records prior to the onset

2    of her disability suggested that reasons other than Plaintiff's alleged disability may be the basis for

3    her unemployment.  (AR 21-24.)  The ALJ provided clear and convincing reasons to support her

4    adverse credibility finding, and the Court therefore rejects Plaintiff's challenge.[2]

5    **I.       Objective Medical Evidence**

6            "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

7    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

8    determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

9    261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); *see also* 20 C.F.R. § 404.1529(c)(2) (stating

10   that evaluation of the intensity and persistence of an individual's symptoms, such as pain, includes

11   "[c]onsideration of objective medical evidence").  As detailed above, the ALJ concluded that

12   Plaintiff's testimony as to her allegedly work-preclusive physical, cognitive, and psychological

13   limitations was not supported by objective medical evidence, including, among other things, MRIs

14   of Plaintiff's lumbar spine and cervical spine, physical examination findings by evaluating

15   physicians, intelligence testing scores, and mental status examinations.  (AR 21-23.)

16          Plaintiff does not challenge the substance of the ALJ's findings related to the objective

17   medical evidence.  Instead, she argues that the ALJ improperly rejected her hearing testimony

18   based *solely* on a lack of supporting objective medical evidence.  (*See* Dkt. No. 25 at 8.)  This

19   argument, however, has no merit—the ALJ set forth multiple clear and convincing reasons for

20   dismissing Plaintiff's testimony, and she properly considered objective medical evidence as one

21   relevant factor in her assessment of Plaintiff's credibility.  *See Lott v. Colvin*, No. 14-CV-01421-

22   JSC, 2015 WL 1738430, at *8 (N.D. Cal. Apr. 10, 2015) ("A lack of objective medical evidence

23   corroborating a claimant's alleged symptoms is an appropriate factor for discounting a claimant's

24   credibility when, as here, the ALJ's credibility finding is supported by other clear and convincing

25   _____

26   [2] Aside from the arguments addressed below, Plaintiff also argues that the ALJ's credibility
     determination was erroneous because she improperly relied on boilerplate language that many
27   courts have previously rejected.  (*See* Dkt. No. 25 at 7-8.)  This argument is baseless; as discussed
     below, the ALJ articulated clear and convincing reasons for giving little weight to Plaintiff's
28   testimony.  The ALJ therefore did not, as Plaintiff contends, rely solely on boilerplate language to
     disregard Plaintiff's testimony.

United States District Court
Northern District of California

reasons.") (citations omitted); *see also Burch*, 400 F.3d at 681; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in assessing credibility, ALJ may consider whether medical evidence is consistent with the alleged symptoms).

## II.    Course of Treatment

A conservative course of treatment can undermine allegations of debilitating pain.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.").  The ALJ dismissed Plaintiff's testimony as partially credible because the course of treatment, both for Plaintiff's physical and mental impairments, was routine and conservative.  (AR 23-24.)  Plaintiff contests the ALJ's finding on grounds that no non-conservative treatment options existed and narcotic medications are not a form of conservative treatment.  (*See* Dkt. No. 25 at 10-11.)

As to Plaintiff's first point, she is correct that "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."  *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *see also Carmickle*, 533 F.3d at 1162 ("[C]onservative course of treatment . . . is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").  However, while there is no affirmative indication in the record that no non-conservative treatment options existed, it is important to note—as the ALJ did—that Plaintiff consulted a neurosurgeon who indicated that Plaintiff's lumbar spine appeared "ok" and recommended only a course of physical therapy (AR 24, 439, 442)—and not any more drastic forms of treatment such as surgery.  This fact supports the ALJ's negative credibility finding.  *See Lott*, 2015 WL 1738430, at *7 ("An ALJ may discount a claimant's symptom testimony where the claimant describes severe and disabling symptoms but has sought *or received* only minimal or conservative treatment for her complaints.") (emphasis added) (citation omitted).

As for Plaintiff's second point, there is no guiding authority on what exactly constitutes

United States District Court
Northern District of California

"conservative" or "routine" treatment.  Several courts in this Circuit have found the use of medication to control pain, and the absence of surgery or injections, to be "conservative" treatment.  *See, e.g.*, *Huerta v. Colvin*, No. CV 13-05935-JEM, 2014 WL 1092467, at *7 (C.D. Cal. Mar. 18, 2014) ("Conservative treatment is a legitimate basis for discounting a claimant's credibility . . . .  Plaintiff's diabetes and back pain were controlled with medication, and there is no evidence of ongoing specialist care, physical therapy or surgery."); *Johnson v. Colvin*, No. 1:12-CV-524-AWI-GSA, 2013 WL 2643305, at *13 (E.D. Cal. June 12, 2013) ("Plaintiff's spinal pain was treated with medication and not injections or surgery" and this "[c]onservative course of treatment is a proper basis to reject Plaintiff's subjective complaints.").  In light of the conservative non-medication treatments, including physical therapy, as well as the lack of any surgical recommendations, the ALJ's characterization of Plaintiff's use of narcotics as "conservative" was at least reasonable, and the Court defers to that conclusion.  *See Batson*, 359 F.3d at 1198.

Accordingly, the course of treatment for Plaintiff's impairments was a clear and convincing reason for the ALJ to discount Plaintiff's hearing testimony.

## III.    Inconsistent Statements

In evaluating a claimant's testimony, the ALJ "may consider inconsistencies . . . in the claimant's testimony [.]"  *Molina*, 674 F.3d at 1112.  An ALJ's adverse credibility finding may be based in part due to a claimant's inconsistent statements to her doctors.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ identified the specific hearing testimony she found not credible and explained why.  First, regarding Plaintiff's testimony that she had extremely limited daily activities, the ALJ noted that Plaintiff had previously acknowledged a considerably greater range of day-to-day activities.  (AR 24.)  Plaintiff disputes this finding because, according to her, "[e]ven the fact that [Plaintiff] has some ability some of the time to perform something is not reason enough to find [her] not credible."  (Dkt. No. 25 at 11.)  While the administrative record could arguably support Plaintiff's position, the Court must defer to the ALJ's conclusion where, as here, the conclusion is a reasonable one.  *See Batson*, 359 F.3d at 1198.  Second, as to Plaintiff's testimony that her medications caused drowsiness, the ALJ cited prior medical records

United States District Court
Northern District of California

1  where Plaintiff had indicated no negative side effects from her medication.  (AR 24.)  Finally, the

2  ALJ commented that, while Plaintiff testified regarding possible surgical recommendations for her

3  impairments, the medical record indicated to the contrary.  (*Id.*)  Because the ALJ identified

4  inconsistencies within Plaintiff's statements, the ALJ cited specific, clear and convincing reasons

5  to support her adverse credibility finding on this basis.  While the Court, and perhaps other ALJs,

6  may have excused these inconsistencies, they fairly contribute to the ALJ's ultimate adverse

7  credibility finding.

8  **IV.    Work History**

9        A finding that a claimant has an "extremely poor work history" and "has shown little

10  propensity to work in her lifetime" negatively affects the claimant's credibility regarding her

11  inability to work.  *See Thomas*, 278 F.3d at 959.  Here, the ALJ noted that Plaintiff's earnings

12  records demonstrated that she worked only sporadically even prior to her alleged onset date of

13  disability, which suggests that reasons other than Plaintiff's medical impairments may have been

14  the basis for her continuing unemployment.  (AR 24.)  Plaintiff's motion does not address this

15  point at all.  The Court concludes that it was at least rational for the ALJ to view Plaintiff's

16  sporadic work history as negatively affecting her credibility and must therefore uphold such a

17  finding even if the evidence could afford an inference more favorable to Plaintiff.  *See Burch*, 400

18  F.3d at 680; *see also Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more

19  than one rational interpretation, we must uphold the ALJ's findings if they are supported by

20  inferences reasonably drawn from the record").  This is a clear and convincing reason for the ALJ

21  to discount Plaintiff's hearing testimony.

22        //

23        //

24        //

25        //

26        //

27        //

28

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court rejects Plaintiff's arguments as to the sufficiency of the ALJ's adverse credibility finding.  Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.  Judgment will be entered in favor of Defendant and against Plaintiff.

This Order disposes of Docket Nos. 25 and 26.

**IT IS SO ORDERED.**

Dated: March 29, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge